UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARLAINA KOLLER-GURGIGNO,

Plaintiff,

-against-

THE CITY OF YONKERS, Police Officer VINCENT
GURGIGNO, Jr. (#314), Sergeant JAMES McGOVERN (#103),
Police Officer PATRICK SALIERNO (#987) and
Lieutenant FOLEY,

Defendants.

Case No.:
18-cv-00098(VB)

**MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO
<u>AMEND THE COMPLAINT</u>**

**HARRIS BEACH, PLLC**
*Attorneys for City Defendants*
445 Hamilton Avenue, Suite 1206
White Plains, New York 10601
(914) 683-1200

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..........................................................................................ii

SUMMARY OF ARGUMENT IN OPPOSITION........................................................ 1

PERTINENT FACTS AND PROCEDURAL HISTORY............................................. 2

ARGUMENT ............................................................................................................... 5

    I.    PLAINTIFF HAS FAILED TO SHOW GOOD CAUSE FOR SEEKING TO AMEND THE COMPLAINT OVER TWO YEARS AFTER THE COURT-ORDERED DEADLINE FOR DOING SO EXPIRED....................................5

    II.    PLAINTIFF'S ORIGINAL COMPLAINT DOES NOT PLEAD A CAUSE OF ACTION ALLEGING A DEPRIVATION OF HER SUBSTANTIVE DUE PROCESS RIGHTS ....................................................7

    III.    PLAINTIFF'S PROPOSED AMENDMENT TO THE COMPLAINT IS FUTILE..............................................................................................................16

CONCLUSION........................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*Benzman v. Whitman*, 523 F.3d 119 (2d Cir. 2008)..........................................................................8

*Brown v. City of New York*, 786 Fed. Appx. 289 (2d Cir. 2019) ..................................................11

*Bunn v. City of Poughkeepsie*, 2012 WL 1621563 (S.D.N.Y. May 9, 2012) ...............................11

*Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122 (2d Cir. 2008) ........................................16

*Carr v. County of Sullivan*, 2018 WL 3733952 (S.D.N.Y. Aug. 3, 2018)...................................11

*Chambers v. North Rockland Cent. Sch. Dist.*,
   815 F. Supp.2d 753 (S.D.N.Y. 2011)........................................................................................11

*City of Mount Vernon v. Davis*,
   2019 WL 1367685 (S.D.N.Y. Mar. 26, 2019) ...........................................................................6

*Coleman v. County of Suffolk*, 685 Fed. Appx. 69 (2d Cir. April 4, 2017) .......................... passim

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998).......................................................12, 13, 19

*DeShaney v. Winnebago County Dept. of Social Services*,
   489 U.S. 189 (1986).....................................................................................................................7

*Diruzza v. Village of Mamaroneck*, 2016 WL 796863
   (S.D.N.Y. Feb. 22, 2016) (Briccetti, J.),
   *aff'd*, 685 Fed. Appx. 34 (2d Cir. 2017) ...........................................................10, 16, 18, 19

*Dunham v. City of New York*, 295 F. Supp.3d 319 (S.D.N.Y. 2018) ............................................6

*Dwares v. City of New York*, 985 F.2d 94 (2d Cir. 1993) .......................................................9, 10

*Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp.2d 527 (E.D.N.Y. 2010) ...........................................6

*Estate of M.D. by Decosmo v. New York*,
   241 F. Supp.3d 413 (S.D.N.Y. 2017)........................................................................................10

*F5 Capital v. Pappas*, 856 F.3d 61 (2d Cir. 2017) ......................................................................16

*Gantt v. Ferrara*, 2017 WL 1192889 (S.D.N.Y. Mar. 29, 2017) ..........................................13, 19

*Griffith-Fenton v. Chase Home Finance*,
    2012 WL 2866269 (S.D.N.Y. May 29, 2012) ...................................................... 16

*Grochowski v. Phoenix Constr.*, 318 F.3d 80 (2d Cir. 2003) ....................................... 5

*Harrington v. County of Suffolk*, 607 F.3d 31 (2d Cir. 2010)............................. 8, 10, 14

*HB v. Monroe Woodbury Cent. Sch. Dist.*,
    2012 WL 4477552 (S.D.N.Y. Sep. 27, 2012)..................................................... 9, 15

*Hirsch v. City of New York*, 300 F. Supp.3d 501 (S.D.N.Y. 2018) ............................... 8

*Holland v. Morgenstern*, 2013 WL 2237550 (S.D.N.Y. May 20, 2013).............................. 11, 16

*Holmes v. Grubman*, 568 F.3d 329 (2d Cir. 2009) ....................................................... 6

*iMedicor, Inc. v. Access Pharmaceuticals, Inc.*,
    290 F.R.D. 50 (S.D.N.Y. April 29, 2013)....................................................... 5, 6, 7

*Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229 (2d Cir. 2007) ........................... 5

*Leatherman v. Tarrant Cnty. Narcotics Intelligence &*
    *Coordination Unit*, 507 U.S. 163 (1993) ......................................................... 9

*Lesperance v. County of St. Lawrence*,
    2011 WL 3651161 (N.D.N.Y. Aug. 18, 2011) ................................................... 9, 17

*Lombardi v. Whitman*, 485 F.3d 73 (2d Cir. 2007)....................................... 9, 13, 17

*Matican v. City of New York*, 524 F.3d 151 (2d Cir. 2008)............................ 12, 13, 19

*Medina v. Tremor Video, Inc.*, 640 Fed. Appx. 45 (2d Cir. Feb. 8, 2016) ................... 16

*Okin v. Village of Cornwall-on-Hudson Police Dept.*,
    577 F.3d 415 (2d Cir. 2009)....................................................................... passim

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2d Cir. 2000)................................. 6

*Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005) ......................................................... 12

*Perrotta v. City Sch. Dist. of Yonkers*,
    2017 WL 4236565 (S.D.N.Y. Sep. 21, 2017)....................................................... 16

*Price v. City of New York*, 2018 WL 3117507 (Jun. 25, 2018) ......................... 8, 10, 14

*Reid ex. rel. Roz B. v. Freeport Public Sch. Dist.*,
  89 F. Supp.3d 450 (E.D.N.Y. 2015) ........................................................................ 9

*Rodriguez v. Rivera*, 2013 WL 5544122 (S.D.N.Y. Sept. 16, 2013) ............................................ 8

*Santucci v. Newark Valley Sch. Dist.*,
  2005 WL 2739104 (N.D.N.Y. Oct. 24, 2005) ............................................................ 9

*Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005) ................................................ 8, 10

*Urbina v. City of New York*, 672 Fed. Appx. 52 (2d Cir. Nov. 29, 2016) ..................................... 7

*Velez v. Burge*, 483 Fed. Appx. 626 (2d Cir. May 25, 2012) ................................................... 5, 6

*Velez v. City of New York*, 730 F.3d 128 (2d Cir. 2013) ......................................................... 8

*White v. City of New York*, 206 F. Supp.3d 920 (S.D.N.Y 2016) ...................................... 9, 14, 17

*Ying Jing Gan v. City of New York*, 996 F.2d 522 (2d Cir. 1993) ............................................. 8

## Rules

F.R.C.P. 12(b)(6) ..................................................................................................... 12

F.R.C.P. 15(a) ......................................................................................................... 5

F.R.C.P. 15(a)(2) ..................................................................................................... 16

Defendants, the City of Yonkers, Police Officer Vincent Gurgigno, Jr., Lieutenant James McGovern,[1] Police Officer Patrick Salierno, and Lieutenant Jeremiah Foley (collectively, the "City Defendants"), respectfully submit this memorandum of law in opposition to Plaintiff's motion for leave to amend the complaint in this action.

## SUMMARY OF ARGUMENT IN OPPOSITION

First, the Court should summarily deny Plaintiff's untimely motion without consideration of the proposed amendments to her Complaint because, pursuant to this Court's initial civil case discovery plan and scheduling order, the deadline for requesting an amendment to pleadings in this case expired over 24 months ago.  Plaintiff has failed to demonstrate good cause for the Court's modification of its scheduling order, and for that reason alone, her motion should be denied.

Further, Plaintiff's motion should also be denied because, like her initial Complaint, her proposed amended complaint also does not sufficiently plead facts which plausibly allege a cause of action for deprivation of her substantive due process rights against Defendant, Lt. McGovern, based upon a "state-created danger" theory relative to the March 19-20, 2016 incident.  Specifically, Plaintiff has failed to allege facts that Lt. McGovern either explicitly or implicitly communicated to Defendant, Police Officer Vincent Gurgigno, Jr. (Plaintiff's then-husband), that Lt. McGovern condoned Gurgigno's alleged physical assaults against Plaintiff, or that any alleged violence by Gurgigno against Plaintiff would go unpunished.  Indeed, there is no allegation that any claimed inaction on Lt. McGovern's part was intended to signal his approval of any alleged violence by Gurgigno against Plaintiff, which is a necessary element of any state-created danger substantive due process claim.  Thus, the alleged nonfeasance or negligence that

---

[1]    Lt. McGovern was a Sergeant at all times relevant to the allegations within the Plaintiff's complaint.

Plaintiff claims against Lt. McGovern does not trigger any protection under the Due Process Clause of the Constitution.  Moreover, the allegations against Lt. McGovern do not "shock the conscience," another necessary element for such a substantive due process claim.  Because Plaintiff has not, and cannot, allege a "state-created danger" substantive due process claim against Lt. McGovern which would survive a motion to dismiss, her proposed amended complaint is futile.  As such, Plaintiff's motion for leave to amend the Complaint should be denied.

## PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff filed her complaint in this action in New York State Supreme Court, Westchester County on or about October 31, 2017 (the "Complaint").  *See* Exhibit "3" (Complaint).[2]  Then, on January 5, 2018, the City Defendants removed the action to this Court without objection by Plaintiff, and subsequently filed an Answer to the Complaint on January 10, 2018.  *See* ECF Dkt. # 1; 2; 9.  The parties then appeared before the Court on May 11, 2018 for an initial pretrial conference and the Court entered a civil case discovery plan and scheduling order that same date. *See* ECF Dkt. # 16.  Pursuant to the initial scheduling order, any motion to amend a pleading was to be filed by June 11, 2018.  *Id.*

Plaintiff's Complaint alleges causes of action for false arrest, excessive force and malicious prosecution arising from the arrest of Plaintiff on May 19, 2016 (after Defendants, Lt. McGovern and Police Officer Patrick Salierno, observed Plaintiff strike her then-mother-in-law, Anna Gurgigno [Defendant Police Officer Vincent Gurgigno, Jr.'s mother], in the head with a set of keys).  Specifically, the Complaint alleges the following eleven causes of action arising

---

[2]    All exhibits referenced herein are annexed to the declaration of Plaintiff's counsel, Justin M. Gardner, Esq. ("Gardner Aff."), dated June 17, 2020 and submitted together with Plaintiff's motion for leave to file an amended complaint.

from the May 19, 2016 incident only: (1) a Section 1983 false arrest/imprisonment claim (Second Cause of Action); (2) a Section 1983 excessive force claim (Third Cause of Action); (3) a Section 1983 malicious prosecution/abuse of process claim (Fourth Cause of Action); (4) a Section 1983 *Monell* claim against the City (Fifth Cause of Action); (5) a state law false arrest/imprisonment claim (Sixth Cause of Action); (6) a state law malicious prosecution claim (Seventh Cause of Action); (7) a state law abuse of process claim (Eighth Cause of Action); (8) a state law excessive force claim (Ninth Cause of Action); (9) a state law claim for intentional, reckless and/or negligent infliction of emotion distress (Tenth Cause of Action); (10) a state law negligence / gross negligence claim (Eleventh Cause of Action); and (11) a state law negligent training, supervision and discipline claim (Twelfth Cause of Action).   *See* Exhibit "3" (Complaint), at ¶¶ 70-140.

Plaintiff also sets forth in her Complaint that on the night of March 19-20, 2016 (two months prior to her May 19, 2016 arrest) she was allegedly physically assaulted by her then-husband, Defendant Police Officer Gurgigno, at their then-marital home, 222 Gailmore Road, in Yonkers (during a custodial dispute which the Yonkers Police Department [the "YPD"], including Lt. McGovern, responded to).   Plaintiff alleges that she was forcibly raped by Gurgigno later that same night after the police left and she decided to stay at home.   In the Complaint, the sole cause of action arising from the alleged occurrences of March 19-20, 2016 is a common law state law civil rape tort claim against Gurgigno (First Cause of Action).   *See* Exhibit "3" (Complaint) at ¶¶ 64-69.

After the completion of discovery in this action (which spanned approximately 18 months), on May 6, 2020, the City Defendants filed a pre-motion letter requesting a conference and the Court's permission to file a motion for summary judgment.   *See* ECF

Dkt. # 62.  Within that letter motion, the City Defendants argued, among other things, that the Court should exercise its discretion and not  hear Plaintiff's state law civil rape claim since it is the sole cause of action arising from the alleged events of March 19-20, 2016.  *Id*. at p. 1, fn. 1. Plaintiff filed a letter response to the City Defendants' pre-motion letter on May 20, 2020, in which Plaintiff devoted over a page (of the 3-page letter) addressing the City Defendants' statement that the only cause of action arising from the March 19-20, 2016 events was Plaintiff's civil rape claim.  *See* ECF Dkt. # 64, at pp. 1-2.  In that letter, Plaintiff claimed that her Complaint adequately alleged "federal claims pursuant to 42 U.S.C. § 1983 arising from the events of March 19-20, 2016," despite the fact that her Complaint does not specifically allege any Section 1983 cause of action arising from the events that Plaintiff claims occurred on that date. *Id*. at p. 2.  Within that same letter, Plaintiff requested that the Court grant her permission to file a cross-motion for leave to amend her Complaint to add such a cause of action.  *Id*.

On May 28, 2020, the parties appeared before the Court for a pre-motion conference (via telephone) to discuss the City Defendants' request for leave to file a motion for summary judgment.  *See* ECF Dkt. # 65.  After that conference, on June 18, 2020, Plaintiff filed the instant motion for leave to file and serve an amended complaint.  *See* ECF Dkt. # 66-18.  Plaintiff's proposed amended complaint attempts to add an additional cause of action which purportedly alleges that Defendant Lt. McGovern deprived Plaintiff of her substantive due process rights on March 19-20, 2016 by failing to arrest Defendant P.O. Gurgigno that night, thereby allegedly "enhancing the danger" that Gurgigno would harm Plaintiff that night.  *See generally*, Exhibit "2" ("Redlined" Proposed Amended Complaint).  For the following reasons, this Court should deny Plaintiff's untimely and futile motion.

**ARGUMENT**

**I**

**PLAINTIFF HAS FAILED TO SHOW GOOD CAUSE
FOR SEEKING TO AMEND THE COMPLAINT
OVER TWO YEARS AFTER
THE COURT-ORDERED DEADLINE FOR DOING SO EXPIRED**

As a threshold matter, this Court should deny Plaintiff's application to amend her complaint because she cannot establish good cause for her delay in seeking the Court's permission to do so.  It is well-settled law that a district court is within its discretion to deny a motion for leave to amend a complaint when such a motion is made <u>after the deadline set by the court to do so</u>, and the party seeking leave to amend <u>fails to show good cause for the delay</u>. *Velez v. Burge*, 483 Fed. Appx. 626, 628 (2d Cir. May 25, 2012).  In the *Velez* case, the Second Circuit affirmed the district court's denial of a plaintiff's motion to amend a complaint where the plaintiff moved the court for that relief "<u>18 months</u> after the magistrate's deadline for amending pleadings, and has not shown good cause for the delay."  *Id.* (emphasis added); *see also*, *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003) (finding no abuse of discretion where a court denied leave to amend a pleading which was made more than one year after the time for doing so, after discovery was completed).

Indeed, as explained by this Court in *iMedicor, Inc. v. Access Pharmaceuticals, Inc.*, 290 F.R.D. 50, 52 (S.D.N.Y. April 29, 2013) (Briccetti, J.), regardless of whether a plaintiff meets the standard for amending a complaint under F.R.C.P. Rule 15(a), they must "<u>demonstrate good cause</u> for modifying [a] scheduling order under Rule 16(b)."  *Id.* (emphases added) (citing *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) ("[W]e hold that amendment of a pleading as a matter of course pursuant to Rule 15(a) is subject to the district court's discretion to limit the time for amendment of the pleadings in a scheduling order issued

under Rule 16(b)"); *Holmes v. Grubman*, 568 F.3d 329, 334-335 (2d Cir. 2009) (affirming denial of motion for leave to amend a complaint where a plaintiff moved for that relief after the court-ordered deadline to do so and plaintiff failed to show good cause for the delay).

Moreover, "[a] finding of 'good cause' depends on the diligence of the moving party, meaning that 'despite its having exercised diligence, the applicable deadline could not have been reasonably met.'" *iMedicor, Inc.*, 290 F.R.D. at 52 (internal citations omitted); *Dunham v. City of New York*, 295 F. Supp.3d 319, 328 (S.D.N.Y. 2018) ("The touchstone of 'good cause' is the 'diligence of the moving party.'" [quoting *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000)]).  Thus, "[t]he good cause standard is not satisfied when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline.'" *Id.* (quoting *Enzymotec Ltd. v. NBTY, Inc.*, 754 F. Supp.2d 527, 536 [E.D.N.Y. 2010] [internal quotations omitted]).

Here, in this case, Plaintiff has failed to demonstrate good cause for requesting leave to amend her Complaint over 24 months after the June 11, 2018 deadline for amendment of pleadings, as set forth in the Court's Initial Civil Case Discovery Plan and Scheduling Order entered on May 11, 2018. *See* ECF Dkt. # 16; *Velez*, 483 Fed. Appx. at 628.  Plaintiff's motion comes only after the City Defendants raised, in their pre-motion letter requesting leave to file a motion for summary judgment, the fact that Plaintiff alleges only one cause of action concerning the March 19-20, 2016 incident, namely, a common law state law civil rape tort claim against Defendant Gurgigno, which, most respectfully, the Court should deny to exercise jurisdiction over.[3]  Seemingly based upon that statement with the City Defendants' letter, Plaintiff realized

---

[3]    In *City of Mount Vernon v. Davis*, 2019 WL 1367685 (S.D.N.Y. Mar. 26, 2019) (Briccetti, J.), this Court succinctly outlined the law regarding supplemental jurisdiction.  Based upon the standard set forth by the Court in that case, Defendants submit that the Court should not exercise jurisdiction over Plaintiff's state law civil rape tort claim even if it were to grant Plaintiff leave to amend her Complaint.

that she did not plead a substantive due process cause of action in the Complaint, and did not adequately allege facts which would support such a claim based upon a "state-created danger" theory, thus spurring the need for Plaintiff's instant motion.  Consequently, Plaintiff can in no way demonstrate that, despite her exercise of diligence, she would have moved the Court earlier for leave to amend the Complaint.  In reality, if Defendants had not raised the issue in their pre-motion letter, Defendants would have moved for summary judgment, and then Plaintiff would have likely sought permission to cross-move the Court for leave to amend her pleading.  Since Plaintiff cannot establish good cause for her delay in moving to amend her Complaint and a modification of the Court's initial scheduling order, this Court should deny her motion for that reason alone.  *See iMedicor, Inc.*, 290 F.R.D. at 52.

## II

### PLAINTIFF'S ORIGINAL COMPLAINT DOES NOT PLEAD A CAUSE OF ACTION ALLEGING A DEPRIVATION OF HER SUBSTANTIVE DUE PROCESS RIGHTS

Plaintiff's original Complaint does not, in fact, allege a cause of action for violation of her substantive due process rights based on a state-created danger exception, despite Plaintiff's attempt to argue that it does.

"As a general matter…a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 197 (1986); *see also*, *Urbina v. City of New York*, 672 Fed. Appx. 52, 55 (2d Cir. Nov. 29, 2016).  Indeed, "the benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations."

*Harrington v. County of Suffolk*, 607 F.3d 31, 34 (2d Cir. 2010) (quoting *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 [2005]).

However, "in <u>exceptional</u> circumstances a governmental entity may have a constitutional obligation to provide…protection, either because of a special relationship with an individual, or because the governmental entity itself has created or increased the danger to the individual." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 533 (2d Cir. 1993) (citations omitted) (emphasis added); *see also*, *Rodriguez v. Rivera*, 2013 WL 5544122, at *5-9 (S.D.N.Y. Sept. 16, 2013) (Briccetti, J.).[4]  The "state-created danger" exception "arises when governmental officials provide a 'prearranged official sanction of privately inflicted injury,' or where a 'state actor aids and abets a private party in subjecting a [person] to unwanted physical harm." *Price v. City of New York*, 2018 WL 3117507, at *22 (Jun. 25, 2018) (citations omitted).  Further, "'[m]indful of the Supreme Court's admonition not to permit the Due Process Clause to "transform every tort committed by a state actor into a constitutional violation,"' the Second Circuit has imposed state-created liability 'with considerable stringency.'"  *Hirsch v. City of New York*, 300 F. Supp.3d 501, 512 (S.D.N.Y. 2018) (quoting *Benzman v. Whitman*, 523 F.3d 119, 127 [2d Cir. 2008]) (emphasis added).

Further, there are several factors that courts consider when determining whether a plaintiff has adequately pleaded a cause of action alleging a state-created danger:

> (1)  "the actor must have affirmatively, using his or her authority to create an opportunity that would not otherwise have existed for the third party's acts to occur"; (2) "there must be evidence that the state actor had culpable knowledge of the danger in which he or she was placing the victim"; (3) "there must be evidence that the state actor's conduct caused the injury to the

---

[4]  Here, Plaintiff does not even attempt to argue that there was a "special relationship" between herself and the YPD, because there was none.  *See Velez v. City of New York*, 730 F.3d 128, 135 (2d Cir. 2013).

victim, or contributed in some material way"; and (4) "there must be evidence that the state actor's conduct was so egregious or outrageous that it is conscience-shocking."

*HB v. Monroe Woodbury Cent. Sch. Dist.*, 2012 WL 4477552, at * 11 (S.D.N.Y. Sep. 27, 2012) (quoting *Santucci v. Newark Valley Sch. Dist.*, 2005 WL 2739104, at *5 [N.D.N.Y. Oct. 24, 2005]).

Indeed, "[o]nly an affirmative act can amount to a violation of substantive due process, because the Due Process Clause is phrased as a limitation of the State's power to act, not as a guarantee of certain minimal levels of safety and security." *Lombardi v. Whitman*, 485 F.3d 73, 79 (2d Cir. 2007) (emphasis added); *see also*, *Reid ex. rel. Roz B. v. Freeport Public Sch. Dist.*, 89 F. Supp.3d 450, 460 (E.D.N.Y. 2015) ("the state created danger theory of liability requires a finding of affirmative conduct on the part of the Defendant, usually acting in direct concert with the perpetrator and witnessing the violence"). As such, "courts must be careful to avoid transposing allegations of negligence and nonfeasance into affirmative action." *Lesperance v. County of St. Lawrence*, 2011 WL 3651161, at *4 (N.D.N.Y. Aug. 18, 2011). Thus, when pleading a cause of action for deprivation of substantive due process rights in this context, "[i]t is not enough to [merely] allege that a governmental actor failed to protect an individual from a known danger of bodily harm or failed to warn the individual of that danger." *Lombardi*, 485 F.3d at 73.

Further, "[w]hen police officers 'merely [stand] by and [do] nothing,' or '[fail] to act upon reports of past violence' it does not implicate a plaintiff's due process rights.'" *White v. City of New York*, 206 F. Supp.3d 920, 934 (S.D.N.Y 2016) (quoting *Dwares v. City of New York*, 985 F.2d 94, 99 [2d Cir. 1993], *overruled on other grounds by, Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 [1993]). Further, "the benefit

that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Harrington*, 607 F.3d at 34 (quoting *Town of Castle Rock, Colo.*, 545 U.S. at 756).

Further, a plaintiff's theory of state-created danger is "fatally undermined by the <u>absence of any allegation that [a defendant] affirmatively communicated, even implicitly, to [a private actor] that abuse against [the plaintiff] was permissible</u>." *Estate of M.D. by Decosmo v. New York*, 241 F. Supp.3d 413, 427 (S.D.N.Y. 2017) (emphasis added) (holding that a plaintiff father failed to state a cause of action for violation of substantive due process where government officials were aware of complaints of child abuse by his child's mother's boyfriend and they did not prevent the boyfriend from further harming his child); *see also*, *Price*, 2018 WL 3117507, at *21-22.   Indeed, there is no substantive due process violation where the defendants did not <u>communicate to the private actor that their violence toward the victim would go unpunished</u>. *Coleman v. County of Suffolk*, 685 Fed. Appx. 69, 71-72 (2d Cir. April 4, 2017).   Moreover, "[w]here there is no allegation that a defendant explicitly approved or encouraged private violence, a plaintiff must allege (and prove) '[a] <u>repeated, sustained inaction by government officials, in the face of potential acts of violence</u> [which] might constitution "prior assurances," rising to the level of an affirmative condoning of private violence.'" *See Okin v. Village of Cornwall-on-Hudson Police Dept.*, 577 F.3d 415, 428 (2d Cir. 2009) (quoting *Dwares*, 985 F.2d at 99).   Further, "the communication must be 'deliberate,' that is, a defendant must have <u>intended</u> for his inaction to signal his approval of the violence." *Diruzza v. Village of Mamaroneck*, 2016 WL 796863, at *6 (S.D.N.Y. Feb. 22, 2016) (Briccetti, J.), *aff'd*, 685 Fed. Appx. 34 (2d Cir. 2017).

10

Thus, a cause of action alleging a substantive due process violation based on a state-created danger theory should be dismissed when the complaint does not plausibly allege communication between a defendant and a private perpetrator that the defendant condoned the perpetrator's violence.  *See Holland v. Morgenstern*, 2013 WL 2237550, at *7 (S.D.N.Y. May 20, 2013).  The court in the *Holland* case explained that "[t]his <u>communication gap is a critical missing link between the danger…[to the plaintiff]…and the state's responsibility for creating it</u>."  *Id.* (quoting *Chambers v. North Rockland Cent. Sch. Dist.*, 815 F. Supp.2d 753, 767 [S.D.N.Y. 2011]); *Carr v. County of Sullivan*, 2018 WL 3733952, at *8 (S.D.N.Y. Aug. 3, 2018) ("[s]uch communication is, in fact, a necessary perquisite to condoning such conduct" [quoting *Bunn v. City of Poughkeepsie*, 2012 WL 1621563, at *5 (S.D.N.Y. May 9, 2012) (internal quotation marks omitted)]).  Similarly, in *Brown v. City of New York*, 786 Fed. Appx. 289 (2d Cir. 2019), the Second Circuit upheld the dismissal of a plaintiff's claim for a violation of her substantive due process on the pleadings because the plaintiff "did not allege that Defendants condoned or encouraged any violence against her…[and]…[s]he did not allege that the Defendants' inaction constituted an implicit 'prior assurance' that violence against [her] would go unpunished."  *Id*. at 292-93 (distinguishing the facts of the *Okin* case).

In the *Coleman* case, the plaintiff (on behalf of her daughter's estate) alleged that the defendants, a County and several of its police officers, violated her deceased daughter's substantive due process rights by increasing the risk that her daughter's boyfriend would physically harm her daughter.  The Second Circuit affirmed the grant of summary judgment to the defendants, explaining the following:

> The record, even viewed most favorably to Coleman, shows that most named defendants neither said nor did anything that could be construed – even implicitly – to condone violence by [the decedent's boyfriend].  To the extent that a few officers are alleged

> to have made statements that could be construed to deny [the decedent] future assistance against [her boyfriend], there is no evidence that these statements were made in [the boyfriend's] presence so as to signal to him any condonation of violence by him.

*Coleman*, 685 Fed. Appx. at 71.[5]  Further, in holding that the actions of the officers did not increase the risk of harm to the decedent, the Court in the *Coleman* case distinguished the *Okin* case (which Plaintiff heavily relies upon here in this case) where "officers responding to 911 calls repeatedly and 'openly expressed camraderie' with a physical abuser and contempt for his victim." *Id*. (quoting *Okin*, 577 F.3d at 430).  Unlike in *Okin*, the officer defendants in *Coleman* had acted on numerous past complaints about the decedent's boyfriend, including "arresting him on outstanding warrants, forcing him to restore property to [the decedent's] home; requiring him to assist in locating the couple's child; and reading to him an order of protection obtained by [the decedent]." *Id*. at 71-72.

Further, there is no substantive due process violation unless the state "action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005) (emphasis added) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 [1998]); *see also*, *Matican v. City of New York*, 524 F.3d 151, 158 (2d Cir. 2008) (holding that defendant officers' failure to protect the plaintiff was too passive to qualify as a state-created danger, notwithstanding that officers promised to protect the plaintiff).  Further, "[i]n gauging the shock, 'negligently inflicted harm is categorically beneath the threshold,' while 'conduct  intended to injure in some way unjustifiable by any governmental interest is the sort of official action most likely to rise to the conscience-shocking

---

[5]    Although the court's decision in the *Coleman* matter was a decision on the defendants' motion for summary judgment (and not a Rule 12(b)(6) motion to dismiss), the Court's statement that a Plaintiff must allege that a defendant communicate, either explicitly or implicitly, that the condoned private acts of violence is pertinent to the Court's consideration of Plaintiff's motion here.

level.'" *Lombardi*, 485 F.3d at 81 (quoting *County of Sacramento*, 523 U.S. at 849). Additionally, although "deliberate indifference" may shock the conscience enough to support a substantive due process claim, the "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another, and [the] concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking." *County of Sacramento*, 532 U.S. at 850.

Moreover, "even in the context of deliberative decisionmaking, the Second Circuit has recognized that where state actors have been subject 'to the pull of competing obligations,' the courts should be reluctant to impose 'broad constitutional liability for the government offices, whose decisionmaking might be inhibited by the threat of lawsuits.'" *Gantt v. Ferrara*, 2017 WL 1192889, at \*12 (S.D.N.Y. Mar. 29, 2017) (quoting *Matican*, 524 F.3d at 159). Thus, for a plaintiff to demonstrate conscious-shocking behavior, he/she "must establish at least a plausible claim that Defendants were <u>repeatedly and deliberately indifferent to an obvious threat of violence to [the plaintiff]</u>." *Gantt*, 2017 WL 1192889, at \*13 (emphasis added).

Here, Plaintiff's original Complaint does not state a cause of action for a deprivation of Plaintiff's substantive due process rights based upon a "state-created danger" theory against Defendant, Lt. McGovern. Notably, Plaintiff alleges twelve causes of action within the Complaint, which are delineated by both specific legal theory and the Defendants that those theories are alleged against. *See* Exhibit "3" (Complaint), at ¶¶ 64-140. However <u>none</u> of those twelve causes of action allege a substantive due process claim against Lt. McGovern. In fact, the only cause of action that Plaintiff alleges which arises from the events that she claims occurred on March 19-20, 2016 is a common law state-law civil rape claim against her ex-husband, Defendant Officer Gurgigno, in his individual capacity (over which this Court should decline to

exercise jurisdiction).   *Id*. at ¶¶ 64-19.   If Plaintiff sincerely believed that her Complaint adequately alleges such a cause of action, she would not have moved this Court for leave to amend the Complaint based upon a statement made by Defendants within their pre-motion letter. *See* ECF Dkt. # 62, at p. 1, fn. 1.

Further, the facts alleged by Plaintiff within the Complaint do not sufficiently plead a state-created danger substantive due process cause of action either.   In the "Statement of Facts" section of her Complaint, Plaintiff devotes only ten short paragraphs to the alleged events of March 19-20, 2016, which allegations are insufficient, as a matter of law, to plausibly allege a substantive due process claim against Lt. McGovern.   *Id*. at ¶¶ 24-34.   Further, there are no facts pleaded which plausibly allege that Lt. McGovern provided Gurgigno a "prearranged official sanction of privately inflicted injury," or that Lt. McGovern "aided and abetted" Gurgigno in allegedly raping Plaintiff (who was still married to Gurgigno at the time) later that night after YPD left 222 Gailmore Road and Plaintiff decided to stay at the house.   *See Price*, 2018 WL 31117505 at *22.   Rather, Plaintiff merely alleges that Lt. McGovern "stood by and did nothing" after Plaintiff allegedly requested that Gurgigno be arrested.   *See White*, 206 F. Supp.3d at 934. The allegations within the Complaint amount to nothing more than a claim that Plaintiff would have benefitted if the YPD had arrested Gurgigno that evening, which did not trigger any protections under the due process clause of the Constitution.   *See Harrington*, 607 F.3d at 34.

Notably, the original Complaint does not contain any allegation that Lt. McGovern approved or encouraged any private violence by Defendant Gurgigno against Plaintiff, either explicitly or implicitly.   First, although Plaintiff alleged in her Complaint that on March 19-20, 2016, during the YPD's response to 222 Gailmore Road, "Sgt. McGovern informed Plaintiff that 'Vinny (referring to P.O. Gurgigno) is a brother and you have no hard evidence," *see* Exhibit "3"

(Complaint), at ¶ 30 (emphasis added), Plaintiff makes no allegation that Lt. McGovern made that statement in the presence of Defendant Gurgigno or that Lt. McGovern otherwise deliberately communicated anything <u>to Gurgigno</u> that McGovern condoned any violence by Gurgigno against Plaintiff (which Defendants submit that there was none), and that any such violence against Plaintiff would go unpunished.  *See Coleman*, 685 Fed. Appx. at 71.

Second, Plaintiff's original Complaint also does not plausibly allege that Lt. McGovern <u>implicitly</u> communicated to Defendant Gurgigno that any violence towards Plaintiff would go unpunished by any "<u>repeated, sustained inaction</u>" "in the face of potential acts of violence [which] might constitute 'prior assurances,'" which would "ris[e] to the level of an affirmative condoning of private violence."  *See Okin*, 577 F.3d at 428 (emphasis added).  Although Plaintiff alleges that she has "made multiple reports against P.O. Gurgigno to the YPD to report incidents of domestic violence and violations of the multiple orders of protection that Plaintiff has obtained against P.O. Gurgigno, *see* Exhibit "3" (Complaint) at ¶ 21, Plaintiff <u>does not allege</u> that she repeatedly made reports of acts of violence by Defendant Gurgigno to Lt. McGovern prior to Lt. McGovern's response to 222 Gailmore Road on March 19, 2016,[6] or that Lt. McGovern was charged with responding to any prior allegations of violence against Gurgigno, or that Lt. McGovern failed to act on any such allegations such that any non-action by Lt. McGovern (which there was none) would provide Defendant Gurgigno assurance that Lt. Govern condoned any private violence by Gurgigno against Plaintiff.  Moreover, even if Plaintiff adequately alleged implicit communication between Lt. McGovern and Gurgigno (which she did not), she certainly failed to allege facts of <u>deliberate communication</u> by

---

[6]   As such, there is also no plausible allegation in the Complaint that Lt. McGovern had "culpable knowledge," or any knowledge, of any potential danger he was allegedly putting Plaintiff in on March 20, 2016.  *See HB*, 2012 WL 4477552, at *11.

Lt. McGovern to Gurgigno. *See Diruzza*, 2016 WL 796863, at *6.  That "communication gap" is a "critical missing link" between the alleged sexual assault that Plaintiff claims she suffered on the night of March 19-20, 2016 and Lt. McGovern's alleged responsibility for it.  *Holland*, 2013 WL 2237550, at *7.  Thus, for those reasons, Plaintiff's original Complaint fails to state a cause of action against Lt. McGovern for deprivation of Plaintiff's substantive due process rights.

III

## PLAINTIFF'S PROPOSED AMENDMENT TO THE COMPLAINT IS FUTILE

"While leave to amend should be 'freely give[n]…when justice so requires,' Fed. R. Civ. P. 15(a)(2), 'motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive…or undue prejudice to the non-moving party.'"  *Griffith-Fenton v. Chase Home Finance*, 2012 WL 2866269, at *4 (S.D.N.Y. May 29, 2012) (Briccetti, J.) (quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 [2d Cir. 2008]).  A court need not grant a plaintiff leave to amend a complaint "if the proposed amendment would still not state a claim, so that the amendment would be futile."  *Medina v. Tremor Video, Inc.*, 640 Fed. Appx. 45, 47 (2d Cir. Feb. 8, 2016).  Indeed, a court should deny a plaintiff's motion for leave to amend a complaint where the proposed amendment would not survive a motion to dismiss.  *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017); *Perrotta v. City Sch. Dist. of Yonkers*, 2017 WL 4236565 at *6 (S.D.N.Y. Sep. 21, 2017) (Briccetti, J.).

Here, Plaintiff's proposed amended complaint fails to state a cause of action for a violation of her substantive due process rights based upon a state-created danger theory (much like her original Complaint), and thus, would not survive a motion to dismiss.  The proposed amendment would be futile, and as such, Plaintiff's motion should be denied.

In her proposed amended complaint, Plaintiff adds the following allegation:

> [O]n March 19-20, 2016, the[n] Sergeant JAMES McGOVERN (#103) enhanced the danger of private violence to Plaintiff by her then husband Police Officer VINCENT GURGIGNO, JR. (#314) by refusing to make a written report or otherwise investigate Plaintiff's report of domestic violence by Police Officer VINCENT GURGIGNO, Jr. (#314), by failing to offer protective services to Plaintiff and her children as require by YPD policy, and by affirmatively instructing Plaintiff that [sic] if she wanted to remain with her daughter, she would have to stay at the residence with Officer Gurgigno who had just physically assaulted her.  As a foreseeable and proximate cause of this conduct, Plaintiff was forcibly raped by Police Officer VINCENT GURGIGNO, Jr. (#314) when she stayed overnight at the residence with him after he had physically attacked her pursuant to the instructions of Sergeant JAMES McGOVERN (#103).

*See* Exhibit "2" ("Redlined" Proposed Amended Complaint), at ¶ 2.  Again, like in her original Complaint, Plaintiff does not allege in her proposed amended complaint anything more than that Lt. McGovern failed to protect Plaintiff from a danger of bodily harm, and thus, she fails to state a cause of action for a violation of her substantive due process rights.  *See Lombardi*, 485 F.3d at 73; *White*, 206 F. Supp.3d at 934.  Indeed, Plaintiff's allegations of negligence and nonfeasance against Lt. McGovern are not affirmative action required for purposes sufficient to allege a "state-created danger" substantive due process claim.  *Lesperance*, 2011 WL 3651161, at *4.

Further, in the above-cited paragraph Plaintiff uses creative word-play in an attempt to allege that Lt. McGovern communicated to Gurgigno that private violence against Plaintiff would go unpunished, when Lt. McGovern did nothing of the sort.  The additional factual allegations that Plaintiff includes in her proposed amended complaint do not plausibly allege any such communication between Lt. McGovern and Gurgigno, either.  As in her original Complaint,

there is no allegation that McGovern <u>explicitly communicated</u> to Gurgigno that any future violence by Gurgigno against Plaintiff would go unpunished.[7]

Further, Plaintiff's added allegation that Lt. McGovern responded to 222 Gailmore Road a year earlier to supervise Gurgigno's removal of certain personal effects from the home is wholly insufficient to plausibly allege that McGovern <u>implicitly communicated</u> that he (or the YPD in general) condoned any private violence allegedly committed by Gurgigno upon Plaintiff. Moreover, it should not even be inferred that, because Lt. McGovern accompanied Gurgigno to his house a year earlier to remove clothing that he was "well-aware of the history of domestic violence between P.O. Gurgigno and Plaintiff." *See* Exhibit "2," ("Redlined" Proposed Amended Complaint), at ¶ 22. Unlike in the *Okin* case, the proposed amended complaint here does not plausibly allege "<u>[a] repeated, sustained inaction by government officials, in the face of potential acts of violence</u> [which] might constitution 'prior assurances,' rising to the level of an affirmative condoning of private violence." *Okin*, 577 F.3d at 428. Nor is there any allegation within the proposed amended complaint that Lt. McGovern <u>intended</u> for any of his alleged inaction to signal approval of any alleged private violence by Gurgigno. *Diruzza*, 2016 WL 796863, at *6. Thus, Plaintiff's proposed amended complaint fails to state a cause of action for deprivation of substantive due process rights for much the same reason that Plaintiff's original Complaint did not plead such a claim. Any amendment to the Complaint would be futile.

Lastly, the facts as alleged by Plaintiff in her proposed amended complaint do not "shock the conscious," which they must to adequately plead a cause of action for a deprivation of

---

[7]       The Plaintiff's allegation that "[a]nother YPD officer accompanying Sgt. McGovern told her that she should be thankful that her then-husband P.O. Gurgigno had agreed to allow her to stay there that evening," *see* Exhibit "2" ("Redlined" Proposed Amended Complaint), at ¶ 26 (emphasis added), is not relevant to the sought-to-be-added claim that <u>Lt. McGovern</u> violated Plaintiff's due process rights. Further, there is no allegation that the other YPD officer made that claim in the presence of Defendant Gurgigno. *See Coleman*, 685 Fed. Appx. at 71.

substantive due process rights.  *See County of Sacramento v. Lewis*, 523 U.S. at 847 n.8; *DiRuzza*, 2016 WL 796863, at *6-7.  The allegations that Lt. McGovern failed to arrest Gurgigno, and resultantly, failed to protect Plaintiff from Gurgigno's alleged rape of her later that night, are too passive to qualify as a state-created danger because Lt. McGovern's alleged negligence (which, in reality, there was none) is categorically insufficient to establish that his actions "shocked the conscience."  *See Matican*, 524 F.3d at 158.  Further, Plaintiff has not plausibly alleged that Lt. McGovern was repeatedly and deliberately indifferent to an obvious threat of violence by Gurgigno to Plaintiff, and thus, Lt. McGovern's actions in responding to 222 Gailmore Road on March 19, 2016 do not shock the conscience under a deliberate indifference standard either.  *See Gantt*, 2017 WL 1192889, at *13.  Thus, for those reasons too, Plaintiff's proposed amended complaint would be futile and the Court should deny Plaintiff's motion for leave to file and serve it.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion which seeks leave of this Court to file an amended complaint should be denied.

Dated: White Plains, New York
        July 16, 2020

                                        Respectfully submitted,

                                        **HARRIS BEACH PLLC**

                                        By:_____/S/_____
                                             Darius P. Chafizadeh
                                             Mathew T. Dudley
                                             *Attorneys for City Defendants*
                                             445 Hamilton Avenue, Suite 1206
                                             White Plains, New York 10601
                                             P: (914) 683-1200
                                             F: (914) 683-1210
                                             dchafizadeh@harrisbeach.com
                                             mdudley@harrisbeach.com